# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:14CV-00061-JHM**

**WEDDLE ENTERPRISES, INC.**                                                          **PLAINTIFF**

**V.**

**TREVIICOS-SOLETANCHE, J.V.**                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Defendant, Treviicos-Soletanche J.V., moves to dismiss Plaintiff Weddle Enterprises, Inc.'s complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or to compel arbitration. [DN 7]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

This matter arises out of a construction project for the repair of the Wolf Creek Dam located on the Cumberland River in Jamestown, Kentucky. The Dam is owned and operated by the United States Army Corps of Engineers and serves to protect downstream communities in Kentucky and Tennessee, generate hydroelectric power, and maintain the navigability of the Cumberland River.

Over the years, the Dam had been experiencing seepage issues. As a precaution, the Corps lowered the water level of the Cumberland Lake to reduce hydrostatic pressure on the Dam. The Corps ultimately determined that the Dam required repair. The Project was publicly bid, and the successful bidder was Defendant, Treviicos-Soletanche J.V., a joint venture consisting of Treviicos South, Inc., a Delaware corporation with its principal place of business in Boston, Massachusetts, and Soletanche Construction, Inc., a Pennsylvania corporation with its principal place of business in Cuddy, Pennsylvania. Under Defendant's contract with the Corps,

Treviicos South's Boston, Massachusetts address was designated as the legal location of the entity contracting with the Corps. Likewise, this address is the address for the Defendant's home office, as well as for tax, insurance, and other purposes. The initial value of the contract awarded by the Corps to Defendant was over $341 million dollars. The Defendant contracted approximately $106 million of the work to subcontractors from various states.

Defendant entered into a subcontract with Plaintiff, Weddle Enterprises, Inc., whereby Plaintiff would perform certain earth work and civil operations, including excavation and grading operations, transportation of excavated material to the on-site disposal area, and building of access roads. Article 28 of the Subcontract provided for a dispute resolution process:

> As for disputes not involving the acts, omissions or otherwise the responsibility of the Owner under the Prime Contract, promptly upon notification by the either party of a dispute, the Contractor and Subcontractor shall meet to amicably resolve such dispute. In the event that no resolution is achieved, the parties, prior to the initiation of any action or proceeding under this Article, shall make a good faith effort to resolve the dispute by negotiation between representatives with decision-making power. To facilitate the negotiation, the parties agree to follow the procedure and rules for mediation provided by the American Arbitration Association.
> In the event a dispute cannot be resolved as set forth above, the matter shall thereafter proceed to, and be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules and to be held in Boston, Massachusetts. The award rendered by the arbitrator(s) shall be final and judgment may be entered on it in accordance with applicable law in any court having jurisdiction.

(Arbitration Agreement at 15.)

Plaintiff brought suit in the Russell Circuit Court asserting that the Defendant breached the subcontract by denying Plaintiff the chance to correct allegedly nonconforming work before the Defendant wrongfully and unilaterally deducted the sum of $289,200.64 from Plaintiff's subcontract amount. On May 14, 2014, Defendant removed the action to federal court based on

diversity of citizenship, 28 U.S.C. § 1332(a). On May 19, 2014, Defendant moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Federal Arbitration Act, 9 U.S.C. § 1, and to compel the parties to arbitrate the claims raised in the complaint in accordance with the terms of the written arbitration agreement between the parties.

## II. STANDARD OF REVIEW

A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Treved Exteriors, Inc. v. Lakeview Const., Inc., 2014 WL 1047117, *3 (E.D. Ky. March 18, 2014). Instead, courts apply the standard applicable to motions for summary judgment. Id. "To survive such a motion, the non-moving party must demonstrate that the validity of the agreement is 'in issue' by showing that there is a genuine issue of material fact as to the validity of the arbitration agreement." Id. (quoting Great Earth Co., Inc. v. Simons, 288 F.3d 878, 888–89 (6th Cir. 2002)). "If the non-moving party satisfies this burden, the court must allow the case to proceed to trial." Id. "If the non-moving party fails to make the required showing, the court should compel arbitration." Id.

## III. DISCUSSION

Defendant moves to dismiss the action and compel arbitration of Plaintiff's breach of contract claim. Plaintiff argues that the Court should not enforce the arbitration agreement pursuant to the requirements of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. Plaintiff contends that the arbitration agreement in this case is not governed by the FAA because it does not evidence a transaction involving interstate commerce. Further, Plaintiff contends that even if the arbitration clause is enforceable, the subcontract's requirement that Plaintiff arbitrate its dispute with Defendant in Boston, Massachusetts is unfair, unreasonable, and unenforceable.

## A. FAA Application to Subcontract

The FAA applies to "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. Under this provision, the scope of the FAA mirrors Congress's Article I power to regulate interstate commerce. "We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003). "Because its scope runs parallel to the Commerce Clause, 'the FAA encompasses a wider range of transactions than those actually . . . within the flow of interstate commerce.'" Brookdale Sr. Living, Inc. v. Stacy, 2014 WL 2807524, *14 (E.D. Ky. June 20, 2014) (quoting Citizens Bank, 539 U.S. at 56). The Supreme Court has stated that the FAA's "involving commerce" requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." Comanche Indian Tribe of Oklahoma v. 49, L.L.C., 391 F.3d 1129, 1132 (10th Cir. 2004) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n. 7 (1967)(quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)); see also Allied–Bruce Terminix Cos., Inc., v. Dobson, 513 U.S. 265, 273–74 (1995) (holding that "involving commerce" is the functional equivalent of "affecting commerce")). Accordingly, the 'interstate commerce' provision has been interpreted broadly, embracing any agreement that in its operation directly or indirectly affects commerce between states in any fashion." Affholter v. Franklin County Water Dist., 2008 WL 5385810 at *2 (E.D. Cal. Dec.23, 2008).

Defendant's invocation of the FAA is appropriate under the circumstances. The subcontract between the parties evidences a transaction involving interstate commerce. As the complaint indicates, Defendant has its principal place of business in Boston, Massachusetts.

Plaintiff's principal place of business is in Somerset, Kentucky. The Wolf Creek Dam is located on the Cumberland River in Jamestown, Kentucky. Thus, the contract containing the arbitration agreement is a contract between citizens of two different states-Kentucky and Massachusetts. See ANR Excavating, LLC v. Venture Const. Co., 2011 WL 3920241, *2 (E.D. Ky. Sept. 7, 2011); Ackerberg v. Citicorp USA, Inc., 898 F.Supp.2d 1172, 1175, 1177 (N.D.Cal. 2012); Del E. Webb Constr. v. Richardson Hosp. Auth., 823 F.2d 145, 147 (5th Cir. 1987)(finding that "[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA.") (citations omitted).

The Project involved the repair of the Wolf Creek Dam to avoid a potential dam rupture which would have a huge impact on intrastate and interstate commerce in Kentucky and Tennessee. The Project was substantial in scale with the initial contract amount totaling $341,452.112. Approximately $106 million of the work was subcontracted to entities from four different states, including Plaintiff. While Plaintiff contends that the majority of material used by Plaintiff for its work on the Project was purchased from businesses within Kentucky, the Plaintiff notably does not allege that it procured *all* goods necessary for the fulfillment of the contract purely through intrastate channels. The other subcontractors procured material and equipment from over thirty states within the United States and five other countries. Additionally, the United States Government funded the project through the United States Army Corps of Engineers indicating a transaction affecting interstate commerce. GGNSC Louisville Hillcreek, LLC v. Warner, 2013 WL 6796421, *8 (W.D. Ky. Dec. 19, 2013)(the receipt of federal funds are transactions involving commerce "and may by themselves establish the appropriate interstate commerce nexus").

Furthermore, all payments to Defendant by the Corps were wired by the Corps to the Defendant's Bank of the West account located in New York, NY. As of May 31, 2014, Defendant had paid to Plaintiff over $23 million dollars with 99.86 percent of those payments being transferred to Plaintiff from Defendant's Bank of the West account located in New York, NY. Only $32,482 was paid by Defendant to Plaintiff from Defendant's Bank of Jamestown account. (Fabio Santillan Aff. at ¶12.) For these reasons, the Court finds that the subcontract at issue relates to interstate commerce, and the FAA applies to this dispute.

**B. Unfair and Unreasonable Arbitration Venue**

Plaintiff argues that in the event the Court finds the subcontract's arbitration clause enforceable under the FAA, the subcontract's requirement that Plaintiff arbitrate its dispute with Defendant in Boston, Massachusetts is unfair and unreasonable.

"While a court may recognize that enforcement of a forum-selection clause . . . in an arbitration agreement may be inconvenient and burdensome to the parties in some instances, the Court does not have the authority to invalidate a term of an arbitration agreement simply on the forum non conveniens argument that it is unfair, unreasonable, or inconvenient to one of the parties." Pomeroy v. Lincoln Nat. Life Ins. Co., 2012 WL 5364367, *4 n. 5 (N.D. Ohio Oct. 30, 2012)(citing Management Recruiters Intern., Inc. v. Griffith, 1992 WL 46100 (N.D. Ohio, Feb. 23, 1992)). Under 9 U.S.C. § 4, this Court may only review the "'making of the agreement to arbitrate.'" Id. The only grounds upon which a court may refuse to enforce an arbitration agreement under the FAA are those that exist for the revocation of a contract – fraud, duress, or unconscionability. Id.

Furthermore, "[t]he validity of contractual clauses dictating the forum for arbitration is now commonly agreed to be a procedural matter" for determination by the arbitrator. Duran v. J.

Hass Group, LLC, 2012 WL 3233818, *4 (E.D.N.Y. June 8, 2012), aff'd, 531 Fed. Appx. 146, 148 (2d Cir. 2013). See also Central W. Virginia Energy, Inc. v. Bayer Cropscience LP, 645 F.3d 267, 274 (4th Cir. 2011); Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 5 (1st Cir. 2004). Since the dispute between the parties is subject to arbitration, a determination of the location or venue of the arbitration is a procedural matter for the arbitrator. Id.

For these reasons, the Court finds that the Plaintiff has not demonstrated that there is a genuine issue of material fact as to the validity of the agreement to arbitrate. Therefore, the Court must grant Defendant's motion to dismiss and compel the parties to arbitrate the dispute.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Treviicos-Soletanche J.V., to dismiss Plaintiff Weddle Enterprises, Inc.'s complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or to compel arbitration [DN 7] is **GRANTED**. Plaintiff's claims are dismissed without prejudice. The parties shall proceed to arbitration in accordance with the terms of their arbitration agreement.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

October 15, 2014